The Honorable Jim House State Representative 6285 East Huntsville Road Fayetteville, Arkansas 72701-7403
Dear Representative House:
I am writing in response to your request for an opinion on retirement programs for city employees of cities of the second class. As you note, A.C.A. § 14-234-303(b) (Supp. 2007) states "any city of the second class desiring to avail itself of the benefits of this subchapter shall" follow a certain procedure to create a waterworks commission. Later in the same subchapter, as you point out, A.C.A. § 14-234-310 (Repl. 1998) permits "any city of the first class" that "own[s] or operate[s] waterworks and distribution systems by or through a board of waterworks commissioners" to "provide a plan for social security, old age pensions, and retirement pay for all or part of the employees under the waterworks system. . . ." With these statutes in mind, you ask:
 Can a second class city with a waterworks commission allow its employees to participate in the retirement program utilized by the rest of the city employees?
RESPONSE
In my opinion, the answer to your question is "no," based on established rules of statutory construction. Applying a standard rule of construction to section 14-234-310 shows that cities of the second class are implicitly prohibited from enacting the type of ordinance you posit. Further, any counter-argument arising from subsection 14-234-303(b) fails because it fails the test for an amendment by implication, on which any such argument relies. *Page 2 
DISCUSSION
In general, "pension and civil service systems" are "state affairs," not "municipal affairs." A.C.A. § 14-43-601(a)(1)(F) (Repl. 1998). Municipalities can enact ordinances pertaining to state affairs only if the ordinance does not conflict with state law. A.C.A. § 14-43-601(a)(2) (Repl. 1998). Thus, the response to your question depends on the answer to an additional question: would such an ordinance by a city of the second class conflict with state law?
The legislature has authorized only cities of the first class to enact ordinances permitting their waterworks commissions to implement retirement programs. See A.C.A. § 14-234-310(a) (Repl. 1998). The relevant portion of section 14-234-310 states:
 In any city of the first class owning and operating waterworks and distribution systems by or through a board of waterworks commissioners created in compliance with this subchapter, the board of waterworks commissioners of the city may provide a plan for social security, old age pensions, and retirement pay for part or all of the employees of the waterworks system. . . ."
(Emphasis added.)
A fundamental rule of statutory construction requires the limiting phrase "city of the first class" to exclude cities of the second class. The Arkansas Supreme Court has explained the rule: "The phrase expressiounius est exclusio alterius is a fundamental principle of statutory construction that the express designation of one thing may properly be construed to mean the exclusion of another." MacSteel Div. of Quanex v.Arkansas Oklahoma Gas Corp., 363 Ark. 22, 31, 210 S.W.3d 878, 883
(2005). Under this rule, the "express designation of" "cit[ies] of the first class" may "properly be construed to mean the exclusion of" cities of the second class. Given that the matter under consideration — retirement programs — is a "state affair" under A.C.A. §14-43-601(a)(1)(F), such a narrow construction of section 14-234-310 is further buttressed. Therefore, any ordinance by a city of the second class permitting their waterworks commissions to establish retirement programs for their employees would conflict with section 14-234-310.
Alternatively, one might argue that such an ordinance does not conflict with state law because the legislature has permitted the ordinance. The argument might go *Page 3 
like this: subsection 14-234-303(b) permits cities of the second class to avail themselves of the benefits of the entire "subchapter," and another statute in the same subchapter authorizes waterworks commission in cities of the first class to establish retirement programs for their employees; therefore, waterworks commissions in cities of the second class have been explicitly authorized to establish retirement programs for their employees. In my opinion, this argument will likely fail because it relies on an amendment by implication, which is not favored when construing statutes.
When interpreting statutes, the basic rule of statutory construction is to give effect to the intent of the General Assembly. E.g., Sykes v.Williams, 373 Ark. 236, ___ S.W.3d ___ (2008); Op. Att'y Gen. 2008-126. To determine a statute's meaning, the first rule is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. E.g. First Arkansas Bail Bonds, Inc. v. State,373 Ark. 463, ___ S.W.3d ___ (2008). The statute must be construed so that no word is left void, superfluous, or insignificant, and meaning and effect are given to every word in the statute if possible. Id. When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need to resort to the rules of statutory construction. Id.
Here, the rules of statutory construction must be resorted to lest the phrase "cities of the first class" in section 14-234-310 be "left void, superfluous, or insignificant." If the term "subchapter" in section14-234-303(b) is given its ordinary meaning, then cities of the second class can avail themselves of all benefits available within the same subchapter. But if that is true, then the limiting phrase "cities of the first class" found in section 14-234-310 has no effect. The opposite problem also exists. If the phrase "cities of the first class" in section14-234-310 is given effect, then the term "subchapter" in section14-234-303(b) is left partly void. The only way to remedy this anomaly is to resort to rules of statutory construction.
The historical development of these two statutes reveals that the relevant rule of statutory construction is amendment by implication. Historically, the authorizations contained in sections 14-234-303(b) and14-234-310 derived from two unrelated statutes, which remained unrelated until 1995. Section 14-234-303 is the codification of Act 215 of 1937. That act only pertained to cities of the first class. Twenty years later, the legislature enacted Act 166 of 1957, which amendedAct 215 of 1937, to permit cities of the second class to establish waterworks commissions under certain circumstances. Act 166 tied the cities of the second *Page 4 
class to the "benefits of" Act 215: "Any city of the second class desiring to avail itself of the benefits of this Act. . . ." (Emphasis added.) The phrase "this Act" referred to Act 215 of 1937. The limitation to "this Act" remained in the statute until Act 789 of 1995 amended the language to bring it in line with the newly adopted code system, which now contained subchapters. Act 789 replaced "this Act" for "this subchapter."
The "subchapter" referred to includes section 14-234-310. The latter statute, as originally enacted by Act 132 of 1945, created two limitations on the ability of municipalities to implement their own retirement programs for waterworks commissions. First, the ability was limited to cities of the first class. Second, the ability was tied to cities of the first class operating a waterworks and distribution system "in compliance with Act 215" of 1937. Section 1 of Act 132 of 1945 makes both limitations clear: "Hereafter in any city of the first class owning and operating waterworks and distribution systems by or through a board of waterworks commissioners created in compliance with Act 215. . . ."
Four key observations arise from comparing these two statutes' histories. First, section 14-234-310 has always been limited to cities of the first class by its express language. Second, cities of the second class were first permitted to establish waterworks commissions in 1957, but the authority granted to them extended only to the "benefits of this Act," which meant Act 215 of 1937. The latter Act did not permit municipalities — of any class — to establish retirement programs for waterworks commissions. Thus, the 1957 amendment only permitted cities of the second class to establish waterworks commissions. Third, the 1995 amendment — which substituted the phrase "this subchapter" — marked the first time the legislature appeared to give waterworks commissions in cities of the second class the authority to implement retirement programs pursuant to section 14-234-310. This is clear because cities of the second class had previously been limited to the benefits provided underAct 215 of 1937, which, as noted, did not permit waterworks commissions to implement retirement programs. Finally, based on these three observations, cities of the second class can only avail themselves of section 14-234-310 if Act 789 of 1995 impliedly amended section 14-234-310
by replacing "this Act" with "this subchapter."
Amendments by implication, however, are not favored. An amendment by implication arises when a later act apparently amends an earlier act without explicitly doing so. As my predecessor stated in Op. Att'y Gen.2006-087: "[a] statute may be amended by necessary implication under the provisions of a later *Page 5 
act, although the statute amended is not mentioned in the amending act."City of Little Rock v. Black Motor Lines, Inc., 208 Ark. 498, 501,186 S.W.2d 665 (1945); Porter v. Waterman, 77 Ark. 383, 91 S.W. 754 (1906). The test to determine whether an amendment by implication has occurred was stated in Op. Att'y Gen. 2005-193:
 In 59 C.J. 857, in speaking of implied amendments to statutes, this language appears:
 "It has been very generally stated that amendments of statutes by implication are not favored and will not be upheld in doubtful cases. Ordinarily, the legislature's enactment of a law will not be held to have changed a statute that it did not have under consideration at the time of enacting such law; and implied amendments cannot arise merely out of supposed legislative intent in no way expressed, however necessary or proper it may seem to be. An amendment by implication can occur only where the terms of a later statute are so repugnant to an earlier statute that they cannot stand together."
 Pruitt v. Sebastian County Coal Mining Company, 215 Ark. 673, 684, 222 S.W.2d 50 (1949).
Id. at 5 (emphasis added).
The only way Act 789 of 1995 could be deemed to impliedly amend section14-234-310, is if the latter is "so repugnant" to section 14-234-303(b) (as amended by Act 789 of 1995) that "they cannot stand together." The two statutes are hardly repugnant in that way because the two statutes grant different powers to different entities. Subsection 14-234-303(b) permits cities of the second class to create waterworks commissions. But section 14-234-310 permits waterworks commissions — in cities of the first class — to create retirement programs. Thus, section 14-234-310
empowers the waterworks commissions created by first class cities with an additional, narrow power that is normally reserved to the state. Accordingly, while the legislature amended section 14-234-303(b) to use the word "subchapter," the legislature's failure to "express" its intent to also amend section 14-234-310 means that the latter statute does not apply to cities of the second class *Page 6 
"however necessary and proper" the implications of the word "subchapter" seem to be.[1]
In conclusion, the answer to your question is "no," in my opinion. Cities of the second class cannot enact an ordinance permitting their waterworks commissions to establish retirement programs for their employees because such an amendment would conflict with state law.
Assistant Attorney General Ryan Owsley prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] I should note that in at least one circumstance, the Arkansas Supreme Court has interpreted the phrase "cities of the first class" to include cities of the second class. E.g., Conner v. Burnett, 216 Ark. 559,226 S.W.2d 984 (1950); Op. Att'y Gen. Nos. 97-109, 95-367. In Conner, the court dealt with a challenge to whether cities of the second class had authority "to fix salaries for their municipal officers." The court explained that the statute was based on a comprehensive act from 1875 "governing cities and towns." Conner, supra, at 560. The original act permitted cities of the first class to fix salaries of their municipal officers, but it was silent about whether cities of the second class could do the same. In Conner, the Arkansas Supreme Court continued its holding that, with respect to this 1875 Act, the phrase "cities of the first class" implies "cities of the second class." Conner does not apply here because we are not dealing with the act from 1874, and because the two statutes at issue here evolved from two separate acts. *Page 1